[8224] Writ of error denied by Supreme Court.
This suit was brought by the Nacogdoches Compress Company, appellant, against the Texas New Orleans Railroad Company, appellee, to recover damages, laid at $20,000, occasioned by the destruction by fire of its cotton compress at Nacogdoches, alleged to have been negligently caused by the appellee.
Appellant alleged several grounds of negligence, among others the following: "That defendant railroad company failed to equip its engines with oil burners, and to use oil, instead of coal; that the fuel that it used was coal, and not oil, and that the property of plaintiff was set on fire by sparks emitted from coal-burning engines of the defendant; that if oil had been used, instead of coal, no sparks would have been emitted, and plaintiff's property would not have been destroyed."
Five fire insurance companies which had issued policies of insurance on the plant intervened as parties plaintiff; each alleging that the policy issued by it contained the subrogation clause, which provided, in effect, that upon the payment to the assured after loss, if the fire was caused by the negligent act of any other person or corporation, that it would be subrogated, upon the payment of said loss, to the cause of action of the plaintiff against such person or corporation causing the loss to the extent of the payment. The insurance companies are also appellants herein.
The defendant, among other things, pleaded a general denial and contributory negligence on the part of plaintiff, in that it had not properly protected the cotton on its platform from fire, etc.
The case was tried before a jury, and resulted in a verdict and judgment for defendant, from which judgment the plaintiff and interveners, after their motion for a new trial had been overruled, have appealed.
Appellants, by their first assignment of error, complain of the action of the court in permitting the witness Stephens to testify, over their objection that the testimony was hearsay, that the Texas production of oil was, in 1905, 27,000,000 barrels, and that it dropped to 17,000,000 barrels in 1906, and *Page 303 
was about the same in 1907, and then it dropped to 10,000,000 barrels in 1908. This testimony was introduced on the issue of negligence of defendant in failing to use oil as a fuel in its locomotives, and in using coal instead. The witness, before testifying as to the amount of the annual production of oil in the years named, admitted, in answer to questions propounded to him by plaintiff, that he personally knew nothing of the production of oil during said years. He testified that the railroad companies for which he was fuel agent, which included the defendant company, had inspectors, sometimes called "oil scouts," who inspected the oil in each oil field; that it was the business of the scouts to keep in touch with the amount of oil in the fields, and to report to their employers. They did not report to the witness directly, but to his superiors, and his superiors reported to him, and that it was upon the reports that he received from his superiors that he based his estimate of the production of oil for the years named. The testimony was hearsay, and the objection to it should have been sustained; but, in view of other parts of the witness' testimony tending to prove the same fact, viz., the inability of the appellee to procure sufficient oil for use as fuel for its engines, which was not objected to upon any ground, other than not being responsive to the question asked, and upon the admission of which no assignment of error is based, we think the admission of the testimony complained of was harmless, and not such an error as required a reversal of the judgment. The issue upon which the testimony was elicited was the negligence of the appellee to use oil as a fuel in its engines. After the witness Stephens had testified as above detailed, he further testified, in answer to questions propounded by appellee's counsel, as follows: "As purchasing agent, and from my knowledge of the purchasing of oil, and from my knowledge of what it would take to supply oil for fuel in 1908, I don't think I would have been able to supply oil to furnish all the engines on these lines, because we used the equivalent of coal in oil, 1,551,104 barrels; that is, estimating four barrels of oil as being equivalent to a ton of coal, we did use 2,164,938 barrels. Now, if we had not used coal, it would have required 1,551,104 barrels more of oil. I don't think we could have been able to have gotten that additional quantity of oil on the markets for fuel purposes in 1908; don't think that it would have been possible. I don't think it would have been possible on account of the export and the refining propositions, from which the refineries and oil people make more money than they do out of crude; it would have been impossible, unless we paid some outlandish prices far in advance of coal." We think, in view of this testimony, that appellant could not possibly have been prejudiced by the testimony complained of. The assignment is overruled.
There was no error in refusing the motion of appellants to strike out the testimony of the witness Connor, to the effect that the Houston Texas Central Railroad Company and the Houston East West Texas Railway Company, from year to year, reduced the number of its oil-burning engines and increased the number that burned coal, as complained of by the second assignment. It was shown that the two roads above named, together with the road of appellee, formed a portion of one system of railways, and had one fuel agent for the entire system. The testimony was admissible on the issue of appellee's negligence in not using oil as a fuel, and appellants' objection that it was irrelevant, immaterial, and hearsay cannot be sustained.
The second proposition under the assignment, that the court should not have permitted the witness to testify that the changes were made, "because we felt satisfied that we would not be able to keep our engines so we could operate them with oil," is not germane to the assignment. The assignment is overruled. What we have said in disposing of the second assignment sufficiently disposes of the third and fourth, which assail the action of the court in admitting the testimony of the witness Connor, before referred to, and testimony of like import of the witness Rock.
By their fifth assignment, appellants complain of the admission, over their objection, of the testimony of the witness E. A. Blount, as to the amount of damage done to the compress property by the fire; the objection being that the witness did not show himself competent to testify as to the value of the particular compress property, nor as to the damage done thereto. As the verdict was against appellants for any damages, it is clear that the jury must have found against appellants on the issue of appellee's liability; and, having found that appellee was not liable for the damages sustained by appellants, a consideration of the extent to which appellants had been damaged could not have been reached by them. We think, therefore, that if there was any error in admitting the testimony the error was rendered harmless by the finding that appellee was not liable for any damages at all. The assignment is overruled.
The sixth assignment complains of the following paragraph of the court's charge; submitting the issue of appellant's contributory negligence: "You are further instructed that if you believe from the evidence that the plaintiff, or its agent or employés, placed cotton where it was burned, and where the fire started, and that same was not protected, except by the roof of the building or shed, and if you find that the placing of such cotton at the place where it was burned, and *Page 304 
where the fire first ignited, and so leaving it there, covered by nothing but the roof, was such an act of omission as a person of ordinary prudence would not have done, in view of the probable danger of the fire from passing engines, if such danger was probable, and if you further find from the evidence that such placing of the cotton there and leaving it uncovered was the proximate cause which, concurring with the negligence of the defendant, if you find the defendant negligent, produced the fire which destroyed the property described in plaintiff's petition and damaged the other property therein described, then the plaintiff was guilty of contributory negligence, and you would find for the defendant, without reference to and notwithstanding any negligence of which the defendant may have been guilty."
It is contended that the issue of contributory negligence was not raised by the facts, and that the court erred in submitting it to the jury. The testimony showed that the compress was adjacent to the tracks used by appellee company; "that it had a large wooden platform, covered by a metallic roof, which came down to within 10 or 11 feet of the floor at its outer edge. The cotton that caught on fire was standing up on end on this platform, and was burning on top. The Nacogdoches Compress Company owned the ground on which its platform and compress stood. The witness again repeated the cotton that was on fire was under the shed — that is, on the covered part of the platform — and the cotton bales stood on their ends. There were several feet of space between the top of the bales of cotton and the roof. The compress was not being operated at the date of the fire. The manager of the compress knew that the Texas New Orleans engines threw sparks. The compress had been cleaned up on Friday night before the fire. The fire was on Monday. The plaintiff kept a watchman at night. Usually at noon Mr. Naaman and the manager, witness Jones, went to lunch at different hours, so as to keep one of them there all the while. The witness had known cotton to be set on fire by the engines on the platform of the compress, however, but none under the shed."
In this connection, Roland Jones, who was general manager of the compress company, testified: "It was an everyday occurrence for the T. N. O. engines to be switching around and near the press during the time I was operating same. Those engines, in switching, emit sparks and cinders. I could not say positively the number of engines that threw out sparks and cinders, but they all spit sparks and cinders sometimes. You could find cinders on the platform as large as the end of your finger. I know that the cotton at the compress was very inflammable. I knew that it was easily ignited; that the cotton that was next to the track was exposed to the track. I knew there was danger of that cotton being set on fire. I had known that for some time, and knowing that we had the cotton in that position on the platform where it could be easily ignited from sparks, I left it there, knowing that fact. In using that machinery down there, there was naturally a good deal of oil around there. During the operating, there was a good deal on the cotton and loose bagging hanging around there, but not after the operating season. There was not during the fire. At the time of the fire, the press was in pretty clean condition. We cleaned it up the night we quit running. That was Friday night before the fire. We did not sweep down the loose cotton. I had seen engines pass there and throw sparks. I knew that; I knew that at the time I left the cotton exposed there. I did not know about what time the trains came in there during the day. I know that, prior to the fire, I had seen these engines throw sparks. I knew all of these facts. I did not have any water setting around on that cotton. I did not have the cotton protected with any cover or anything. I did not have the cotton sprinkled, or dampened, or anything of the kind."
We think the evidence was sufficient to raise the issue of contributory negligence, and that the charge complained of was required by the facts proved. The assignment is overruled.
We have examined the other assignments of error urged by appellants in their briefs, and are of the opinion that no reversible error is pointed out in any of them. The judgment of the court below is affirmed.
We have carefully considered appellee's motion to strike out the statement of facts filed in this court in this case, and have concluded that the same should be overruled, and it is so ordered.
Affirmed.